# EXHIBIT 1

# COMPLAINT

MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Alan Bradshaw, #4801
Matthew D. Church, #15574
Margaret Kelly, #18978
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
(801) 363-5678
mchurch@mc2b.com
mkelly@mc2b.com

*Attorneys for Plaintiff*

IN THE FOURTH JUDICIAL DISTRICT COURT
IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| ALEX QUINN,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONWIDE GENERAL INSURANCE COMPANY,<br><br>        Defendant. | **COMPLAINT AND DEMAND FOR A JURY TRIAL**<br><br>Civil No. _____<br><br>Judge \_\_\_\_\_ |

Plaintiff Alex Quinn ("Quinn"), by and through undersigned counsel, complains against Nationwide General Insurance Company ("Nationwide") as follows:

## PARTIES

1. Plaintiff Quinn is an individual living in Provo, Utah.

2. Defendant Nationwide is an insurance company engaged in the business of providing property insurance to policyholders like Quinn.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter in this action pursuant to Utah Code § 78A-5-102.

4. Venue is proper in this Court pursuant to Utah Code § 78B-3-304.

5. Quinn designates this as a Tier 3 action under the Utah Rules of Civil Procedure because the amount of damages exceeds $300,000.

## FACTUAL BACKGROUND

### The Policies

6. At all relevant times, Nationwide was engaged in the business of selling property insurance.

7. Nationwide and Quinn entered into their first contract of insurance for the property located at 459 E 900 S, Orem, UT 84097 (the "Orem Property"), Policy No. 7243HR022539 (the "Orem Policy"), providing coverage from September 28, 2021, to September 28, 2022.

8. Premiums were paid for the Orem Policy.

9. Nationwide appointed Dustin Neal Dastrup ("Dastrup"), from Neal Dastrup Insurance, INC., as its "producing" agent for purposes of issuing the Orem Policy to Quinn.

10. Nationwide is bound by the conduct of Dastrup in procuring insurance coverage for Quinn. *See* Utah Code § 31A-23a-405(2).

11. The Orem Policy is a homeowners insurance policy. Quinn lived in the Orem Property until May of 2022.

12. Quinn consulted with Dastrup again on June 29, 2022, and applied for coverage on a property located at 472 E 4380 N, Provo, UT 84604 (the "Provo Property").

13. Dastrup was acting as a "producing" agent for Nationwide in helping Quinn apply for coverage.

14. In the process of applying for insurance on the Provo Property, Quinn disclosed all occupancy and residency information requested by Nationwide to Dastrup, including that Quinn intended to move from the Orem Property to the Provo Property, and make it his primary residence.

15. With the assistance of Dastrup, Nationwide and Quinn entered into a second contract of insurance for the Provo Property, Policy No. 7243HR025399 (the "Provo Policy"), providing coverage from July 5, 2022, to July 5, 2023.

16. Premiums were paid for the Provo Policy.

17. Dastrup acted on behalf of Nationwide as a "producing" agent for purposes of issuing the Provo Policy to Quinn.

18. The Provo Policy is also a homeowners insurance policy, and Quinn disclosed to Nationwide that he intended to move from the Orem Property to the Provo Property.

19. Quinn moved from the Orem Property to the Provo Property in May of 2022.

20. Quinn renewed his Orem Policy with the assistance of producing agent Dastrup. The renewal provided coverage from September 28, 2022 to September 28, 2023.

21. The Orem Policy is a homeowners insurance policy.

22. Premiums were paid to renew the Orem Policy.

## The Contract

23. The Orem Policy provides coverage for "the dwelling on the 'resident premises' shown in the Declarations" as well as "materials and supplies located on or next to the 'resident premises.'" Coverage A – Dwelling.

24. Quinn's Orem Property is the dwelling indicated in the declarations.

25. Further, the Orem Policy provides coverage for all perils that cause "direct physical loss to property" and the policy does not list fires as an exclusion to this coverage.

26. Accordingly, damage to property by fires is covered by the Orem Policy.

27. The Orem Policy provides $354,600 of coverage for a dwelling. But Quinn is entitled to 150% of the coverage limit as part of a "Dwelling Replacement Cost," bringing the total owed coverage to $531,900.

28. The Orem Policy also provides coverage for "other structures on the 'residence premises' set apart from the dwelling by clear space." Even structures connected by "only a fence, utility line, or similar connection." Coverage B-Other Structures.

29. The Orem Policy provides $34,232 of coverage for other structures near the house.

30. Quinn's Orem Property contains a car port and a shed that would be covered by the policy as other structures.

31. The section titled "Coverage C – Personal Property" of the Orem Policy also provides coverage for personal property including landlord's furnishings. This covers "appliances, carpeting and other household furnishings" that are "regularly rented or held for

4

rental to others by an 'insured,'" and which are lost due to a peril. Thus, Quinn is entitled to coverage of any lost furnishing.

32. The Orem Policy provides $265,950 of coverage for personal property. Quinn is entitled to up to $265,950 for personal property lost in the fire.

33. The section titled "Coverage D – Loss of Use" of the Orem Policy covers "fair rental value" lost as a result of the damage to the property. If a loss occurs that makes "part of the 'residence premises' rented to others … not fit to live in," Nationwide will "cover the fair rental value of such premises."

34. The Orem Policy provides "loss of use" coverage for the "actual loss sustained" by the damage to the property.

### The Loss and Denial of Coverage

35. On May 11, 2023, the Orem Property caught fire and burned. The house, as well as the car port and shed, were badly burned.

36. Quinn promptly notified Nationwide of the loss on May 11, 2023.

37. Under Nationwide's records, Quinn's claim was categorized as Claim No. 583511-GO (the "Claim").

38. A few weeks after the loss, Nationwide called and interviewed Quinn regarding the Claim.

39. On this call, Quinn honestly answered all of Nationwide's questions.

40. Specifically, Quinn told Nationwide how the fire started and what took place on May 11, 2023.

41. He also disclosed to Nationwide the full history of occupancy for the Orem Property, including the date he moved to his Provo Property and the occupancy status of the Orem Property at the time of loss.

42. During this phone call, Nationwide gathered all information they would need to process Quinn's claim.

43. Nationwide assigned Quinn an adjuster.

44. Quinn emailed and called his adjuster on multiple occasions.

45. His adjuster was initially unresponsive but finally informed Quinn that Nationwide would be investigating the claim.

46. On June 7, 2023, Nationwide, through its Contracts Claims Associate Miguel Aguliar, sent Quinn a Reservation of Rights letter.

47. In the Reservation of Rights letter, Nationwide stated that the Claim "created a few coverage questions" about the occupancy at the Orem Property on the date of loss during the renewed Orem Policy period. The letter stated that Nationwide would investigate the occupancy issue as part of processing the Claim.

48. Quinn reached out to the adjuster several times between June and January and received no substantive communication from him.

49. The lack of communication from Nationwide and having to endure months of uncertainty regarding the Claim caused Quinn a large amount of stress. It also put stress on his marriage. It also required Quinn to retain a lawyer.

50. Nearly seven months after Nationwide sent its Reservation of Rights letter, Nationwide had still not made a coverage decision.

51. As a result, Quinn's counsel sent a letter to Nationwide via Mr. Aguilar on December 26, 2023, outlining Nationwide's duty to adjust or pay the claim under the policy. In this 5-page letter, Quinn's counsel analyzed (1) insurance policy rules of construction in Utah; (2) Nationwide's duty of good faith; (3) Nationwide's duty to provide coverage under the Orem Policy language; and (4) Nationwide's owed damages to Quinn.

52. Rather than responding to the December 26 letter, Nationwide denied Quinn's Claim in a January 3, 2024 letter (the "Denial Letter")—237 days after Quinn's Claim and 210 days after Nationwide's Reservation of Rights Letter.

53. Nationwide's excessive delay is disallowed under UT ADC R590-190-10(2).

54. Further, the Denial Letter failed to address the statements contained in the Quinn's December 26 letter.

55. Nationwide's Denial Letter vaguely asserts that Quinn failed to timely notify Nationwide of changes to occupancy. However, Nationwide failed to identify any language regarding what impact, if any, such an alleged failure to provide notice has on available coverage or identify a basis to deny coverage.

56. Nationwide asserts in its recent denial material that it denied the claim because Quinn was not living in the Orem Property on the date of the loss and that it discovered this information in its investigation.

57. But Nationwide knew that Quinn was not living in the Orem Property before the loss.

7

58. Nationwide denied coverage despite Quinn's previous disclosure of all occupancy and residency information to Nationwide through its agent, Dastrup, when Quinn applied for coverage on June 29, 2022.

59. Nationwide collected premiums under the Orem Policy.

60. Nationwide did not rescind coverage under the Orem Policy.

61. Nationwide has not returned any premiums paid pursuant to the Orem Policy.

62. Before deciding to deny coverage to Quinn, Nationwide also picked and hired a contractor to start the repairs on the Orem Property.

63. The contractor started work on the house and performed at least $20,000 of work. Nationwide not only denied Quinn's claim, but left Quinn to pay this bill as well.

64. As a result of Nationwide's actions, Quinn may experience foreclosure on the Orem Property.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

65. Quinn repeats and incorporates by reference all the allegations above.

66. Quinn is insured under the Orem Policy.

67. Nationwide is obligated to provide coverage to policyholders for the types of loss outlined in the contract.

68. Nationwide's duties include promptly and reasonably evaluating claims and providing policyholders with coverage losses covered by the contract.

69. Quinn experienced a loss to the Orem Property that is covered by the Orem Policy.

70. Quinn seeks a judicial determination of his rights under the Orem Policy including that Nationwide has a duty to pay claims that are encompassed by the policy.

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

71. Quinn repeats and incorporates by reference all the allegations above.

72. There was a valid contract between Nationwide and Quinn to provide coverage for the Orem Property. The contract includes coverage for damage created by fire.

73. Quinn answered all of Nationwide's questions about occupancy when he applied for insurance and paid the premiums for his insurance policy.

74. Quinn called Nationwide the day of loss and informed it of the damage.

75. Quinn also answered all of Nationwide's questions when it called him to discuss the loss.

76. Nationwide breached the Orem Policy's terms by denying Quinn's claim and failing to provide him with coverage.

77. Nationwide breached the Orem Policy's terms by failing to adjust Quinn's claim timely. Nationwide took almost 8 months to deny the claim.

78. Nationwide breached the contract in other ways that will be developed in discovery.

79. As a direct and proximate result of Nationwide's breach of the Policy, Quinn has suffered great financial loss including the cost of the house, other structures, and personal property in the house, the amount in rent that Quinn would have made, at least $20,000 in work done by the contractor, emotional and marital stress, the possibility of foreclosure, attorney fees, and other damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing)

80. Quinn repeats and incorporates by reference all the allegations above.

81. The Policy contains an implied duty of good faith and fair dealing. Nationwide failed to diligently investigate Quinn's claim, failed to fairly evaluate Quinn's claim, and failed to act "promptly and reasonably" to reject or settle Quinn's claim. *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985). Instead, Nationwide took almost 8 months to inform Quinn that it would not be providing coverage, even though it had received all relevant information to process the claim within a few weeks of the loss.

82. Nationwide only made minimal efforts to evaluate Quinn's claim, despite having nearly 8 months to do so.

83. Further, Nationwide failed to fairly evaluate Quinn's claim, as evidenced through Nationwide's failure to respond to or address Quinn's December 26, 2023 letter, written by Quinn's counsel.

84. Nationwide's actions injured Quinn's ability to obtain the benefits of his contract with Nationwide.

85. Nationwide breached its obligation of good faith and fair dealing on multiple occasions as described above, and others to be proven at trial.

86. As a direct and proximate result of the breach of the duty of good faith, Quinn has suffered damages in an amount to be proven at trial. These damages include, but are not limited to, Quinn's emotional distress, marital stress, economic damages, and the legal fees and costs incurred in this action.

## FOURTH CAUSE OF ACTION
### (Estoppel)

87. Quinn repeats and incorporates by reference all the allegations above.

88. Quinn asserts this claim in the alternative in the event that the Court finds that no coverage exists under the Orem Policy.

89. Dastrup, acting as Nationwide's agent, helped Quinn with both policies and knew Quinn's occupancy status when he applied for both the Orem and Provo Policies.

90. Nationwide promised Quinn that he would receive coverage on his Orem Property and accepted his premiums as evidence.

91. By accepting Quinn's premiums, Nationwide should have expected that promising to provide coverage for Quinn's homes would lead him to think he was covered, and as a result, refrain from seeking coverage elsewhere.

92. Quinn reasonably relied on Nationwide's promise to provide coverage, especially when they accepted his premiums without issue.

93. Finally, Nationwide's actions have caused Quinn to suffer both economical damage and emotional distress.

### PRAYER FOR RELIEF

Plaintiffs pray for relief from Defendant as follows:

1. On the First Cause of Action against Nationwide:

    a. For damages according to proof at trial;

    b. For pre- and post-judgment interest according to law;

    c. For Plaintiff's reasonable attorneys' fees, costs, and expenses of this action; and

    d. For such other and further relief as the Court deems proper.

2. On the Second Cause of Action against Nationwide:

    a. For damages according to proof at trial;

    b. For pre- and post-judgment interest according to law;

    c. For Plaintiff's reasonable attorneys' fees, costs, and expenses of this action; and

    d. For such other and further relief as the Court deems proper.

3. On the Third Cause of Action against Nationwide:

    a. For damages according to proof at trial'

    b. For pre- and post-judgment interest according to law;

    c. For Plaintiff's reasonable attorneys' fees, costs, and expenses of this action; and

    d. For such other and further relief as the Court deems proper.

4. On the Fourth Cause of Action against Nationwide:

    a. For damages according to proof at trial'

    b. For pre- and post-judgment interest according to law;

    c. For Plaintiff's reasonable attorneys' fees, costs, and expenses of this action; and

    d. For such other and further relief as the Court deems proper.

DATED this 6th day of August 2024.

MANNING CURTIS BRADSHAW
& BEDNAR PLLC

_____
Matthew D. Church
*Attorneys for Plaintiff*